**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
ERIC W. PAYNE,                 )
                               )
          Plaintiff,           )
                               )
          v.                   )     Civil Action No. 10-679 (RWR)
                               )
DISTRICT OF COLUMBIA, et al.,  )
                               )
          Defendants.          )
_____)
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff Eric Payne brings suit against defendants District of Columbia ("D.C.") and Dr. Natwar Gandhi, D.C.'s Chief Financial Officer ("CFO"), alleging that the defendants violated the D.C. Whistleblower Protection Act ("DC-WPA"), D.C. Code § 1-615.51 et seq., by retaliating against him for making protected disclosures, and that the defendants violated the United States Constitution by defaming him and depriving him of his liberty interest in following his chosen profession.[1]  At the close of discovery, the defendants moved for summary judgment.  Because Payne did not show that the defendants' legitimate, non-retaliatory reason for terminating him is pretextual, and the undisputed facts establish that Payne has no constitutional

---

[1] Payne also asserts a claim for wrongful termination in violation of D.C. common law which he now agrees is "subsumed" by his DC-WPA claim.  See Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 13.  Thus, judgment for the defendants will be entered on Payne's wrongful termination claim.

defamation claim, the defendants' motion for summary judgment will be granted as to Payne's DC-WPA claim regarding his termination and his constitutional defamation claim. The defendants' motion will be denied as to Payne's DC-WPA claim regarding other acts of retaliation given factual disputes concerning their causation.[2]

BACKGROUND

In July or August of 2004, Payne was hired as the Assistant General Counsel for procurement in the Office of the CFO ("OCFO"). See Payne v. District of Columbia (Payne II), 859 F. Supp. 2d 125, 127 (D.D.C. 2012). In May 2006, Payne was promoted to Director of Contracts. Payne v. District of Columbia (Payne I), 773 F. Supp. 2d 89, 92 (D.D.C. 2011). "[I]n that capacity, [Payne] initiated the process of awarding to one of two bidders a contract to be the service provider for the D.C. lottery." Payne II, 859 F. Supp. 2d at 127. Payne alleged that after a "fair, reasonable, and objective competition," he selected W2I for the contract. Id. "However, the proposed lottery contract was contingent upon the D.C. Council's review and approval." Id.

According to Payne, two D.C. Councilmembers "cajoled the [O]CFO into withdrawing W2I's contract." Id. at 128. Despite pressure from the D.C. Council and Gandhi, Payne refused to

_____

[2] Payne also filed an untimely motion for summary judgment on his DC-WPA claim that fails to show entitlement to judgment as a matter of law. That motion will be denied.

modify the proposed contract and warned "the Councilmembers that forcibly removing and replacing a joint venturer after completing the source selection process would be illegal." Payne II, 859 F. Supp. 2d at 128 (alterations and internal quotation marks omitted). From April 2008 to July 2008, Payne complained several times to his supervisor Paul Lundquist, Lundquist's supervisor Angell Jacobs, and Gandhi, and filed a complaint with the Office of Integrity and Oversight ("OIO") within the OCFO about the irregularities with the lottery contract and his concerns with other general contracting practices at the OCFO. Defs.' Mot. for Summ. J. ("Defs.' Mot."), Defs.' Stmt. of Undisputed Material Facts in Supp. of Mot. for Summ. J. ("Defs.' Stmt.") ¶¶ 15-26. Payne also met with the D.C. Auditor in November 2008 to discuss these concerns. Id. ¶ 27.

During the same time that Payne was voicing his concerns about the lottery contract and OCFO's other contract and business practices, Payne alleges that his duties at the OCFO were being curtailed. On May 15, 2008, the OCFO's General Counsel filed a complaint against Payne with the OIO. Id. ¶ 28. The same day, Lundquist told Payne "to find another job by September 2008 or he would be let go." Id. ¶ 29. On July 1, 2008, Payne was told that he "would be removed from his supervisory role at the OCFO's Office of Contracts" and in August 2008, Payne's change in status

was announced officially.  Id. ¶¶ 30-31.  In October 2008, Payne

"was given an even more limited role" at the OCFO.  Id. ¶ 32.

On January 9, 2009, Payne was terminated from the OCFO.

Payne alleges that after his termination, "the OCFO made several

defamatory statements about him to the public through major area

newspapers, which impugned his reputation and marketability in

the work place."  Payne I, 773 F. Supp. 2d at 94 (alterations,

internal quotation marks, and citations omitted).

> The Washington Post article at issue included a statement
> from Mr. Payne that he and other D.C. officials were
> pressured to reopen the lottery contract for bids, as
> well as a statement in response from the CFO's office
> that "no member of the City Council or their staffs nor
> anyone from the executive branch has made any attempt to
> influence the contract bidding process in any way."

Id. (alterations omitted) (quoting Tim Craig & Nikita Stewart,

Rule Changes May Help LTE Keep Contract, Wash. Post, Apr. 20,

2009).  Payne alleges that the "latter statement was false and

effectively stated that Mr. Payne lied about facts."  Id.

(alterations and internal quotation marks omitted).

After Payne was terminated from the OCFO, he worked

temporarily at "the District of Columbia Housing Authority

[("DCHA")] as legal counsel, advising the procurement director."

Defs.' Stmt. ¶ 4 (internal quotation marks omitted); Pl.'s Stmt.

of Genuine Issues of Mat. Facts in Dispute ¶ 3(d).  Payne also

started a company, Public Procurement Solutions, where he

"performed work for the District of Columbia Office of

Contracting and Procurement," "the Housing Authority of the City of San Buenaventura, California," and "a Virginia federal contracting firm called Interactive Technologies Group." Defs.' Stmt. ¶¶ 5-8. Payne earned approximately $50,000 from his work with Public Procurement Solutions. Id. ¶ 9.

Payne filed a five-count amended complaint against the defendants. Count One alleges that the defendants violated the Fifth Amendment by depriving Payne of a liberty interest without due process. Counts Two, Three, and Four charge that the defendants retaliated against Payne. Count Five alleges that the defendants intentionally inflicted emotional distress on Payne.[3]

The defendants move for summary judgment on Payne's DC-WPA claim arguing that the majority of the allegedly retaliatory actions are barred by the statute of limitations and that Payne cannot show any causal connection between his allegedly protected disclosures and his termination from the OCFO. The defendants further allege that Payne cannot make out a constitutional defamation claim.

## DISCUSSION

Summary judgment may be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

[3] Counts Two and Five were dismissed previously. See Payne I, 773 F. Supp. 2d at 99, 102.

P. 56(a).  A dispute is "genuine" "where the 'evidence is such
that a reasonable jury could return a verdict for the non-moving
party.'"  Dozier-Nix v. District of Columbia, 851 F. Supp. 2d
163, 166 (D.D.C. 2012) (quoting Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986)).  "To survive a motion for summary
judgment, the nonmoving party must provide evidence showing that
there is a triable issue as to an element essential to that
party's claim."  Banks v. Vilsack, 932 F. Supp. 2d 185, 189
(D.D.C. 2013) (internal quotation marks omitted); see also Moore
v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009).  "It is well
settled that conclusory allegations unsupported by factual data
will not create a triable issue of fact."  Exxon Corp. v. FTC,
663 F.2d 120, 126-27 (D.C. Cir. 1980) (internal quotation marks
omitted).

I.   DC-WPA CLAIM

To bring a civil action under the DC-WPA, the plaintiff must
timely file his action.  See D.C. Code § 1-615.54.  To establish
a prima facie case of retaliation in violation of the DC-WPA, a
plaintiff must show (1) "that [he] made a protected disclosure,"
(2) "that a supervisor retaliated or took or threatened to take a
prohibited personnel action against [him]," and (3) "that [his]
protected disclosure was a contributing factor to the retaliation
or prohibited personnel action."  Wilburn v. District of
Columbia, 957 A.2d 921, 924 (D.C. 2008).  "[A]fter a plaintiff

makes a prima facie case that his 'protected disclosure' was a 'contributing factor' in his dismissal, the burden shifts to the defendant to show by clear and convincing evidence that the [adverse employment action] would have occurred for 'legitimate, independent reasons' even if he had not engaged in activities protected under the Act." Crawford v. District of Columbia, 891 A.2d 216, 219 (D.C. 2006). "If the defendant can articulate such a reason for the action, plaintiff then bears the burden of proving that the explanation for the action is a pretext." Coleman v. District of Columbia, 893 F. Supp. 2d 84, 101 (D.D.C. 2012) (citing Crawford, 891 A.2d at 218). The defendants move for summary judgment arguing that most of Payne's claims are time-barred, that Payne cannot show a causal connection between his protected disclosures and his termination, and that Payne cannot show that the defendants' proffered legitimate, non-retaliatory reason for terminating him is pretext.[4]

---

[4] Payne also filed a motion arguing that he is entitled to judgment as a matter of law that his 2008 demotion was retaliatory. Discovery closed in this case on July 31, 2012. See Order at 2, ECF No. 95. "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). The Local Civil Rules do not set a different time for filing motions for summary judgment and the court did not order Payne to file his motion at a different time. See generally LCvR 7(*l*) ("A dispositive motion in a civil action shall be filed sufficiently in advance of the pretrial conference that it may be fully briefed and ruled on before the conference."). Thus, Payne's motion for summary judgment was due on August 31, 2012. The defendants moved for an extension of time to file their dispositive motion. That motion

was granted by minute order on September 7, 2012 and the *defendants* were ordered to file their motion for summary judgment by October 15, 2012. Payne did not move for an extension of time to file his motion for summary judgment. Nevertheless, Payne filed his motion for partial summary judgment on October 15, 2012. Accordingly, Payne's motion is untimely.

Even if Payne's motion were filed timely, it would be denied because Payne has not shown that he is entitled to judgment as a matter of law that the defendants violated the DC-WPA by demoting Payne in July 2008 because, among other things, there are genuine disputes of material fact as to whether Payne's protected disclosures were a contributing factor to his demotion.

A plaintiff can establish causation by showing that the employer knew about the employee's protected conduct and that the adverse employment action occurred shortly thereafter. Clayton v. District of Columbia, 931 F. Supp. 2d 192, 202 (D.D.C. 2013). Payne alleges that he made protected disclosures in April 2008 and May 2008. He further alleges that his supervisors at the OCFO knew about his disclosures before they demoted him in July 2008. Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot."), Mem. of P. & A. in Supp. of Pl.'s Mot. for Partial Summ. J. at 14-16; see Pl.'s Mot., Ex. D (Paul Lundquist Dep. ("Lundquist Dep.") at 181:15-17, 19-20) (testifying that he recalled Payne "mentioning that he had [a concern about an OCFO employee] and wanted OIO to look into it"); Pl.'s Mot., Ex. B (Eric W. Payne Aff. ¶ 11) (stating that after June 12, 2008 Bob Andary, the Director of the OIO at the OCFO, "disclosed to [Payne] that [Andary] had reported [Payne's] April 2008 investigation request to Gandhi").

The defendants counter that there are genuine disputes of material fact regarding "whether, how, and how much his supervisors knew about [Payne's] disclosures." Defs.' Mem. of P. & A. in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Defs.' Opp'n") at 11. For example, the defendants provide evidence that Lundquist does not recall whether he knew about the OIO's investigation before Payne was demoted. See Lundquist Dep. at 181:9-20. Also, in his deposition, Andary testified that he had no memory of telling Gandhi that the OIO had initiated an investigation based on Payne's disclosure. Defs.' Opp'n, Ex. V (Robert Andary Dep. at 152:11-154:2).

Although Payne provided evidence to support his assertion that his supervisors at the OCFO knew about his protected disclosures, the defendants have put forward sufficient evidence for a reasonable jury to find that Payne's supervisors at the OCFO did not know about his disclosures. The genuine dispute of material fact as to whether Payne's supervisors knew about his disclosures precludes a judgment as a matter of law that Payne's

A. <u>Statute of limitations</u>

The defendants argue that the allegedly retaliatory conduct that occurred before January 8, 2009 is time-barred under the law in effect at the time that the conduct occurred.[5]  <u>See</u> Defs.' Mot., Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem.") at 14-15.  Payne counters that the 2010 amendments to the DC-WPA statute of limitations are retroactive and that under the current statute, his claim based on conduct

_____

protected disclosures were a factor contributing to his demotion. Furthermore, Payne bases his causation argument on the temporal proximity between his employer's learning of his protected disclosures and his demotion.  However, "an inference of retaliation cannot rest solely on 'temporal proximity' (even if it is established) where the opportunity for retaliation conflicts with the opponent's explicit evidence of an innocent explanation of the event."  <u>Johnson v. District of Columbia</u>, 935 A.2d 1113, 1120 (D.C. 2007).  Here, the defendants provide evidence that Payne was demoted "after multiple and continued complaints from both his subordinates and others who interacted with his office" "because he was not effective as a manager." Defs.' Opp'n at 12.  At her deposition, Jacobs testified that in June 2008, she often received "complaints about his management style, the way he interacted with [staff], that he was he was a bully, and that he was retaliatory in his management style." <u>Id.</u>, Ex. P (Angell Jacobs Dep. at 51:11-52:10).  Payne does not attempt to dispute the defendants' proffered reason for demoting him.  Thus, he has not shown that there is an undisputed causal connection between his protected disclosures and his demotion.

[5] Although Payne did not bring this action until April 30, 2010, the parties entered into a tolling agreement under which the parties agreed "that all applicable statute of limitations as to any and all claims that Payne may have against the District of Columbia, in connection with, related to, or arising from his employment and termination thereof, shall be tolled and suspended during the period of time [the] Agreement [was] in effect." Defs.' Mot., Ex. H (Am. Agreement - #2, To Toll Statute of Limitations ¶ 1).  The tolling agreement was in effect from January 8, 2010 to May 1, 2010.  Defs.' Stmt. ¶¶ 11, 13.

that occurred before January 8, 2009 was filed timely.  See Pl.'s
Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 19-20.

Before 2010, to bring a civil action under the DC-WPA, a
complainant was required to file his action "within one year
after a violation occur[red] or within one year after the
employee first [became] aware of the violation."  D.C. Code § 1-
615.54(a) (2009).  In 2010, an amendment to the statute of
limitations went into effect.  Whistleblower Protection Amendment
Act of 2009, 2010 D.C. Legis. Serv. 18-117 (West).  Under the
current law, a complainant must file his action "within 3 years
after a violation occurs or within one year after the employee
first becomes aware of the violation, whichever occurs first."
D.C. Code § 1-615.54(a)(2).  The 2010 amendments to the statute
of limitations were made retroactive.  See Sharma v. District of
Columbia, 791 F. Supp. 2d 207, 212-13 (D.D.C. 2011) (discussing
D.C. case law that "establish[es] that the 2010 Amendments to the
statute of limitations . . . are retroactive" because the
amendment was procedural in nature).  Thus, the statute of
limitations as amended in 2010 applies to Payne's DC-WPA claim.[6]

_____

[6] The defendants assert that in Payne I, Judge Friedman held
that the "pre-amendment version" of the DC-WPA applies to Payne's
claim.  Reply to Opp'n to Mot. for Summ. J. at 7.  However, in
Payne I, Judge Friedman stated only that the amendment
authorizing an action against individual supervisors was not
given retroactive application.  See Payne, 773 F. Supp. 2d at
100.  He did not discuss whether the procedural amendments to the
statute of limitations were retroactive.

In the defendants' motion for summary judgment, they assume that the pre-2010 version of the DC-WPA applies to Payne's claim and state that under the applicable law, Payne was required to file his claim "within one year after a violation occurs."  See Defs.' Mem. at 14-15.  The 2010 amendments allow a complainant to file his claim within the earlier of three years after a violation occurs or one year after the employee becomes aware of the violation.  Thus, under the current law, Payne's claim may have been filed timely.  In their reply brief, the defendants argue for the first time that the time began to run when Payne first became aware of the violation.  See Reply to Opp'n to Mot. for Summ. J. ("Defs.' Reply") at 8-9.  Arguments raised for the first time in reply briefs are not considered.  See Am. Wildlands v. Kempthorne, 530 F.3d 991, 1001 (D.C. Cir. 2008); Rollins Envtl. Servs. (NJ) Inc. v. EPA, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991).  But the defendants further contend that Payne "has not argued that he was unaware of his claims at the time each alleged discriminatory retaliation occurred."  Defs.' Reply at 8 (internal quotation marks omitted).  However, under D.C. law, the defendants bear the burden of demonstrating that Payne's claims are time-barred.  See Oparaugo v. Watts, 884 A.2d 63, 73 (D.C. 2005).  Because the defendants have not shown that the one-year statute of limitations applies to Payne's claim, the defendants'

motion for summary judgment on the allegedly retaliatory conduct that occurred before January 8, 2009 will be denied.

B.  Causal connection between protected activity and termination

To establish a prima facie case of retaliation in violation of the DC-WPA, a public employee must show that a protected disclosure was a contributing factor in the prohibited personnel action.  However, to prevail on such a claim at trial, "'a jury must find a *direct causal link*'" between a protected disclosure and the retaliatory action.  See Johnson v. District of Columbia, 935 A.2d 1113, 1119 (D.C. 2007).  "Essentially, then, liability under the Whistleblower Protection Act is measured under a 'but for' analysis."  Id.  The defendants argue that Payne cannot demonstrate that his protected disclosures were even a contributing factor in, let alone a but for cause of, his termination.  See Defs.' Mem. at 15-16.  Payne counters that "temporal proximity" between his protected disclosures and termination and a record that "shows a consistent ongoing animus against him following his earliest protected disclosures" demonstrate causation.  Pl.'s Opp'n at 20.

"A plaintiff may show causation through direct evidence or circumstantial evidence, such as by showing . . . a close temporal proximity between the employer's knowledge and the adverse actions."  Clayton v. District of Columbia, 931 F. Supp. 2d 192, 202 (D.D.C. 2013) (citing Rattigan v. Gonzales, 503 F.

Supp. 2d 56, 77 (D.D.C. 2007); Johnson, 935 A.2d at 1120–21).

"The cases that accept mere temporal proximity between an

employer's knowledge of protected activity and an adverse

employment action as sufficient evidence of causality to

establish a prima facie case uniformly hold that the temporal

proximity must be very close[.]" Clark Cnty. Sch. Dist. v.

Breeden, 532 U.S. 268, 273 (2001) (internal quotation marks

omitted). "[T]he cases cited by the Breeden Court seem to

suggest that if a plaintiff relies upon temporal proximity *alone*

to establish causation, the time span must be under three

months." Buggs v. Powell, 293 F. Supp. 2d 135, 148 (D.D.C.

2003). The parties agree that Payne engaged in protected conduct

through November 2008 when Payne met with the D.C. Auditor.

Defs.' Stmt. ¶ 27.[7] While the defendants concede that the OCFO

---

[7] In his opposition, Payne suggests that he engaged in
protected conduct through December 2008 when the Office of the
Inspector General completed its "extensive investigation of
Payne's charges." Pl.'s Opp'n at 22-23. Payne cites Exhibit 17
to his opposition to support his argument but unhelpfully, does
not provide specific citations to where in the 68-page exhibit
(much of which contains illegible handwritten notes) the nature
and date of Payne's allegedly protected conduct is discussed.
Although a "district court is under no obligation to sift through
the record" to decide a motion for summary judgment, Jackson v.
Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 154
(D.C. Cir. 1996), a modest review of Exhibit 17 reveals several
references to a June 20, 2008 conversation between Payne and
"Case Agent" Johnnie Bright. See, e.g., Pl.'s Opp'n, Ex. 17 at
24. However, the Exhibit does not appear to support Payne's
assertion that his protected conduct lasted through December
2008. Thus, Payne has not demonstrated that he engaged in
protected conduct through December 2008.

knew about Payne's protected disclosures through July 2008, <u>see</u> Suppl. Mem. in Supp. of Summ. J. Addressing Pl.'s Ex. 17 at 3, the defendants contend that "even after all the discovery taken in this case, there is no evidence that anyone at the OCFO knew about [Payne's] meeting [with the D.C. Auditor]," Defs.' Mem. at 19. Citing Exhibit 17 to his opposition, Payne counters that the "Defendants were well aware of Plaintiff's protected disclosures, prior to the May 15, 2008 action and prior to [Payne's termination]." Pl.'s Opp'n at 23. However, Payne does not point to any place in the exhibit to support this assertion or to demonstrate that anyone at the OCFO knew about the November meeting. Because Payne has not shown that the defendants knew about his protected conduct in November 2008, only Payne's protected conduct through July 2008 will be considered.

Payne was terminated in January 2009. The passage of six months between Payne's protected conduct and termination is, without more, insufficient to establish a causal connection. <u>See</u> <u>Buggs</u>, 293 F. Supp. 2d at 148. Accordingly, Payne cannot rely alone on the temporal proximity between his protected conduct and termination to establish causation.

Although Payne cannot show causation through temporal proximity, "'temporal proximity is but one method of proving retaliation. Evidence of discriminatory or disparate treatment in the time period between the protected activity and the adverse

employment action can be sufficient to show a causal connection.'" Id. at 149 (alteration omitted) (quoting Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 38 (1st Cir. 2003)). "[W]here there is a lack of temporal proximity, circumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference.'" Id. (internal quotation marks omitted) (quoting Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)). For example, in Buggs, the plaintiff claimed that he was denied promotions in retaliation for engaging in protected conduct. See id. at 147. There, the court found that a seven-month span between the plaintiff's protected conduct and the plaintiff's non-promotion was, by itself, insufficient to establish causation. See id. at 149. Nonetheless, the court found that "the proffered evidence as a whole, when viewed in the light most favorable to the plaintiff, creates an inference of retaliatory discrimination with respect to the plaintiff's non-[promotion], even though its proximity to the protected activity would not alone support such an inference." Id. Specifically, the court found that the same decisionmaker was responsible for a number of allegedly retaliatory actions that occurred over a span of time. Id. at 149-50.

Here, Payne argues that "his protected disclosures consistently and continuously resulted in Defendants' repeated,

escalating acts of retaliation which . . . culminated in his termination on January 9, 2009." Pl.'s Opp'n at 24. Payne alleges that as he continued to make protected disclosures, the OCFO's actions turned from internal complaints to threats that Payne would be terminated, and from threats to formal action to change Payne's status, reduce Payne's duties, and ultimately terminate him. Payne also alleges that the same OCFO employees were responsible for these adverse employment actions. During this time, Payne also made numerous protected disclosures. Given Payne's protected disclosures from April 2008 through July 2008 and evidence of the allegedly retaliatory actions, there is sufficient evidence from which a reasonable jury could find a causal connection between Payne's protected disclosures and his termination from the OCFO.[8]

C. Legitimate, independent reason for Payne's termination

The defendants argue that Payne would have been terminated even if he had not engaged in protected conduct because "he missed work and did not complete assignments." Defs.' Mem. at

_____

[8] The defendants argue that protected "disclosures made after an employer has contemplated taking an adverse action cannot support a [DC-]WPA claim." Defs.' Mem. at 17 (emphasis omitted). While a plaintiff relying solely on temporal proximity cannot establish causation where an employer had contemplated an adverse employment act *before* the employee engaged in protected activity, see Breeden, 532 U.S. at 272, the defendants have not shown that Payne cannot rely on retaliatory actions that occurred after the OCFO contemplated terminating Payne to prove causation by showing a pattern of antagonism.

20.  In support of this proffered reason, the defendants provide
numerous e-mails that discuss Payne missing deadlines and not
reporting to work as required.  <u>See</u> Defs.' Mot., Exs. D-E.  The
defendants also provide an e-mail from Lundquist to Payne asking
Payne to explain discrepancies between the start time Payne
listed on his timesheet and the first time Payne used his card
key to enter his office on the given day.  <u>See</u> Defs.' Mot, Ex. F.

Payne argues that the defendants' have not shown by clear
and convincing evidence that Payne was terminated because he
missed deadlines and did not report to work.  Pl.'s Opp'n at 30-
31.  "Clear and convincing evidence is such that 'will produce in
the mind of the trier of fact a firm belief or conviction as to
the facts sought to be established.'"  <u>Brown v. The George</u>
<u>Washington Univ.</u>, 802 A.2d 382, 386 n.6 (D.C. 2002) (quoting <u>In</u>
<u>re D.I.S.</u>, 494 A.2d 1316, 1326 (D.C. 1985)).  Thus, the standard
"generally requires the trier of fact, in viewing each party's
pile of evidence, to reach a firm conviction of the truth on the
evidence about which he or she is certain."  <u>United States v.</u>
<u>Montague</u>, 40 F.3d 1251, 1255 (D.C. Cir. 1994).  Here, Payne
argues that the discrepancies between Payne's timesheet and his
card key access data do not establish conclusively that Payne
falsified his time sheet.  <u>See</u> Pl.'s Opp'n at 30.  Payne also
provides evidence that during this same time he was working on
some assignments.  <u>See</u> Pl.'s Opp'n at 31, Ex. 15.  Payne's

argument and evidence show that the defendants have not established conclusively their legitimate non-retaliatory reason for terminating Payne. However, the clear and convincing evidence standard does not require such certainty. See Hopkins v. Price Waterhouse, 737 F. Supp. 1202, 1204 n.3 (D.D.C. 1990) ("The clear and convincing standard . . . requires a degree of persuasion higher than mere preponderance of the evidence, but still somewhat less than clear, unequivocal and convincing or beyond a reasonable doubt." (internal quotation marks omitted) (quoting Collins Sec. Corp. v. SEC, 562 F.2d 820, 824 (D.C. Cir. 1977)). By providing evidence that Payne's supervisor and colleagues reported that Payne was missing deadlines and not reporting to work, the defendants have provided sufficient evidence to produce in the mind of a reasonable jury a firm conviction that Payne missed deadlines and did not report to work as required.

Payne also argues that the defendants' reason is pretextual. Specifically, Payne asserts that the defendants offered inconsistent testimony regarding who decided to terminate Payne. Pl.'s Opp'n at 27-30. However, the evidence Payne cites does not support his assertion. In its response to Payne's interrogatories, D.C. stated that "Paul Lundquist, Angell Jacobs and LaSharn Moreland were involved in the decision to terminate plaintiff." Pl.'s Opp'n, Ex. 21 (Def. D.C.'s Answers to Pl.'s

Interrogs.) at 3. Payne contends that Lundquist testified at his deposition that Gandhi was the only person involved in deciding to terminate Payne. However, the allegedly supporting page in Lundquist's deposition is omitted from the plaintiff's exhibit and the submitted portions of Lundquist's deposition do not support Payne's contention. See Pl.'s Opp'n, Ex. 8 (Lundquist Dep. 11/9/11 at 46:9-12) (testifying he did not recall whether he told Payne that his termination "represented, quote, unquote, the will of [Gandhi]").

Payne further argues that there is a "factual inconsistency" regarding whether Lundquist and Gandhi discussed Payne's performance during regularly scheduled meetings. During his deposition, Lundquist testified that he did not recall meeting with Gandhi to discuss Payne in November 2008, December 2008, or January 2008. Pl.'s Opp'n, Ex. 9 (Lundquist Dep. 2/13/12 at 167:5-14). Payne argues that Lundquist's testimony is at odds with D.C.'s statement in its response to its interrogatories. However, Payne did not cite any evidence to support this proposition.[9]

---

[9] Payne also alleges that he has reason to believe that his December 29, 2008 performance review was "created after the fact to justify Defendant's termination of Plaintiff." Pl.'s Opp'n at 26. This unsupported, conclusory assertion is insufficient to show pretext. Moreover, the defendants did not offer the performance evaluation as evidence of their legitimate, non-retaliatory reason for terminating Payne. Although a "factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a

Because the defendants provided clear and convincing evidence of their legitimate reason for terminating Payne and Payne did not offer admissible evidence that the explanation is pretextual, summary judgment will be entered for the defendants on Payne's DC-WPA claim that he was terminated in retaliation for making protected disclosures.

II. CONSTITUTIONAL DEFAMATION

The defendants move for summary judgment on Payne's constitutional defamation claim arguing that Payne cannot make out a claim because he has been employed in his chosen profession since his termination from the OCFO. See Defs.' Mem. at 10-12.

"A claim for deprivation of a liberty interest without due process based on the defamatory statements of government officials in combination with a termination may proceed on one of two theories." Holman v. Williams, 436 F. Supp. 2d 68, 78 (D.D.C. 2006). A plaintiff may bring a "reputation-plus" claim or a "stigma or disability" claim. See id. at 78-79. Here, Payne's claim turns on "a continuing stigma or disability arising from official action." Payne I, 773 F. Supp. 2d at 95 (internal quotation marks omitted).

---

suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show [retaliation]," St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993), Payne has not demonstrated that there is evidence in the record that a jury could use to find that the defendants are lying about their proffered legitimate non-retaliatory reason for terminating Payne.

To prevail in a "stigma or disability" claim, the plaintiff must "demonstrate that [the] government 'imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities.'" McCormick v. District of Columbia, 899 F. Supp. 2d 59, 65 (D.D.C. 2012) (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972)). The Fifth Amendment guarantees the "right to follow a chosen trade or profession." Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895-96 (1961). Thus, a plaintiff's liberty interest is implicated if an official government action precludes the plaintiff from pursuing his chosen career or profession. See Kartseva v. Dep't of State, 37 F.3d 1524, 1528-29 (D.C. Cir. 1994); see also Holman, 436 F. Supp. 2d at 80 (explaining that the official action must be one that "has the effect of seriously affecting, if not destroying, a plaintiff's ability to pursue his chosen profession, or substantially reducing the value of [his] human capital" (internal quotation marks omitted)).

Here, Payne claims that the OCFO's comments in the Washington Post about Payne's termination "suggested that Plaintiff was dishonest, a liar and terminated for reasons related to performance." Am. Compl. ¶ 73. Payne further alleges that the OCFO's statements about "Plaintiff's professional competence and reputation . . . placed a significant roadblock on

his ability to obtain permanent full time employment in his chosen field of contract procurement law" and "created a stigma that foreclosed Plaintiff's freedom to take advantage of other employment opportunities, including pursuing employment in his chosen field as an attorney interested in government procurement." Id. ¶¶ 74-75. The defendants contend that Payne's temporary employment with the DCHA as "legal counsel, advising the procurement director" and Payne's brief involvement with Public Procurement Solutions demonstrate that Payne has not been precluded from pursuing his chosen profession. See Defs.' Mem. at 11-12. Payne does not dispute that his temporary position with the DCHA and work with Public Procurement Solutions were positions in his chosen profession. Instead, Payne argues that despite his "limited, temporary employment," a reasonable jury could still find that he has been foreclosed from his chosen profession. See Pl.'s Opp'n at 16.

A plaintiff's employment in his chosen field, even if temporary, suffices to defeat his "stigma or disability" constitutional defamation claim. In Alexis v. District of Columbia, 44 F. Supp. 2d 331 (D.D.C. 1999), the plaintiffs claimed that the defendants violated their Fifth Amendment liberty interests by defaming them and the defendants moved for summary judgment on this claim. "Four of the plaintiffs aver[red] that they ha[d] had no success obtaining employment

*within their respective fields* despite repeated attempts to do
so." Id. at 341 (emphasis added).  As to those plaintiffs, the
court denied the defendants' motion for summary judgment, in
part, because the plaintiffs provided evidence that "they ha[d]
been denied employment within their professions altogether."  Id.
Two other plaintiffs "acknowledge[d] that subsequent to their
termination from District government employment, they ha[d] had
opportunities, albeit temporary ones, to work within their
professions."  Id. at 342.  Thus, the court concluded that
"[n]otwithstanding the fact that the positions each plaintiff
secured were not permanent, and thus were understandably
unsatisfactory to them," these plaintiffs had failed to show that
they were foreclosed from their chosen profession.  Id.  Because
"[n]o reasonable jury could find that they ha[d] been precluded
from employment in their respective fields," the court granted
the defendant's motion for summary judgment as to these
plaintiffs.  Id.

Thus, even though Payne's firm, Public Procurement
Solutions, ultimately failed and he was employed only temporarily
with the DCHA, no reasonable jury could find that Payne has been
precluded from employment as an attorney specializing in
government procurement.  Accordingly, the defendants' motion for

summary judgment on Payne's constitutional defamation claim will be granted.[10]

## CONCLUSION AND ORDER

The defendants did not show that Payne's DC-WPA claim based on retaliatory action that occurred before January 8, 2009 is time-barred, but Payne did not rebut the defendants' legitimate, non-retaliatory reason for terminating him from the OCFO. Payne's untimely-filed cross-motion for summary judgment did not establish undisputed material facts about why he was demoted. Because Payne was temporarily employed in his chosen field after the defendants made their allegedly defamatory statements, he cannot show that he has been precluded from following his chosen profession. Payne's wrongful termination claim is subsumed by his DC-WPA claim. Accordingly, it is hereby

ORDERED that the defendants' motion [129] for summary judgment be, and hereby is, GRANTED IN PART and DENIED IN PART. Summary judgment is entered for the defendants on Payne's claim in Count Three that he was retaliatorily terminated from the OCFO, and on Counts One and Four. Summary judgment is denied as to Payne's other claims of retaliation in Count Three.

---

[10] Additionally, because Payne has not disputed the defendants' assertion that this is the only remaining claim against Gandhi, Defs.' Mem. at 7, 8, 12, Gandhi will be dismissed from this action.

Dr. Natwar Gandhi is dismissed as a party defendant.  It is further

ORDERED that Payne's motion [130] for partial summary judgment be, and hereby is, DENIED.  It is further

ORDERED that Payne's motion [168] for a status conference be, and hereby is, GRANTED.  The parties shall appear for a scheduling conference on December 17, 2013 at 11:00 a.m.

SIGNED this 3rd day of December, 2013.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge